[No. 20640.   Department One.   September 21, 1927.]

GEORGE GOUIN, *Appellant,* v. NORTHWESTERN NATIONAL
INSURANCE COMPANY OF MILWAUKEE,
*Respondent.*[1]

[1] INSURANCE (142)—ADJUSTMENT OF LOSS—VALIDITY OF AWARD.
The appraisement clause in a fire insurance policy providing
that the appraisers selected by the parties shall first select an
umpire authorizes them to select an umpire before any dis-
agreement between them, and the fact that there was no dis-
agreement does not invalidate their award.

[2] SAME (140)—PROCEEDINGS OF ADJUSTERS—RIGHT TO OBJECT.
Where the power to select an umpire by the policy is vested in
the appraisers, the consent of the insured to the umpire selected
is not necessary.

[3] SAME (140)—PROCEEDINGS OF ADJUSTERS—NECESSITY OF TAKING
EVIDENCE. Where the appraisement clause in a fire insurance
policy does not provide for the taking of evidence, the ap-
praisers, chosen as experts, may make an award without taking
evidence.

[4] SAME (140)—APPRAISEMENT OF LOSS—NOTICE TO INSURED—
NECESSITY. An award of insurance appraisers is not open to
objection because notice of the appraisement was not given the
insured, where it appears that he was present.

[5] SAME (159)—ACTION ON POLICY—DEFENSES. The fact that the
insured claimed a total loss, does not affect the right of the
company to dispute that fact and claim an appraisement under
the clause in the policy providing therefor in the event of a
disagreement as to the amount of the loss.

[6] SAME (142)—LOSS—DETERMINATION OF APPRAISERS—VALIDITY.
An award of appraisers fixing the amount of a partial loss, in
accordance with the terms of the policy, is binding upon the
insured, notwithstanding that city officers have found a loss in
excess of fifty per cent of the value of the building and, under
a municipal ordinance, refuse to allow the building to be re-
constructed of the same material, but require other construc-
tion requiring an outlay equal to a total loss.

Appeal from a judgment of the superior court for
King county, Findley, J., entered October 8, 1926, upon

¹Reported in 259 Pac. 387.

the verdict of a jury rendered in favor of the defendant by direction of the court, in an action on contract. Affirmed.

*Arthur C. Dresbach,* for appellant.
*John W. Heal, Jr.,* for respondent.

FULLERTON, J.—On September 29, 1924, the appellant Gouin was the owner of certain real property situated in the city of Seattle, on which there was a building used as a dwelling house. On that day he applied to the respondent, Northwestern National Insurance Company, for insurance on the house, and a policy of insurance was issued to him, insuring the building against damage or loss by fire in the sum of $4,500. On February 10, 1925, he applied for, and was given, insurance on the contents of the building in the sum of $1,000. Each of the policies contained conditions to the effect that the insurance company should not be liable beyond the actual cash value of the property at the time any loss or damage occurred, which loss or damage should be ascertained with proper deductions for depreciation, however caused. With reference to the building, the insurance contract provided that, in no event, should the company be liable in excess of the cost required to repair or replace the building with material of like kind and quality of that with which it was originally constructed; that it should be optional with the company to repair, rebuild or replace the property destroyed with property of like kind and quality; and that,

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately

sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expenses of the appraisal and umpire.''

A fire occurred in the building on August 1, 1925, in which fire the building and its contents were partially destroyed. The appellant claimed a total loss, and made proofs to the company to that effect. The company disputed the claim, and offered a stated sum in satisfaction of the loss. This the appellant refused to accept, whereupon the company demanded an appraisement of the loss in accordance with the terms of the policies. Each of the parties thereupon selected an appraiser and these two an umpire, and the persons so selected proceeded to make, and did make, an appraisement of the loss. Their report was unanimous. They awarded to the appellant, as damages to the building, the sum of $1,475.95, and as damages to the personal property the sum of $336.25. The company tendered the aggregate of these sums to the appellant in satisfaction of the loss, which tender the appellant refused.

The appellant thereafter instituted the present action to recover upon the insurance policies. In his complaint, he set out the policies in substance and effect, alleged a fire during the life of the policies, alleged that the insured property was totally destroyed, and that its value exceeded the amount of the insurance. He then alleged:

''VI. That immediately after said fire occurred defendant, by its agents and representatives, began a series of proceedings arranged in systematic order, designed and planned to cause fear and doubt in plaintiff's mind and thereby prevent him from recovering that amount which was due to him from defendant,

and to defeat and defraud him of said sum in the following manner:

"(a) By getting him to visit the office of the fire chief of the city of Seattle and while there embarrass him with suggestive questions tending to frighten him, should he insist on a remuneration for damages.

"(b) By refusing to provide him with the blank forms it required to conform to the provisions of the policy, upon which to make the necessary proof of loss in accordance with the custom of insurance companies in case of fire, thereby causing him to employ help, well knowing the difficulty attached thereto, and the possibility that the plaintiff would not comply with all the terms of the policy, with which terms he was not familiar, and which defendant knew or should have known, and that plaintiff accepted the policy without reading it, relying upon the statement of defendant through its agents and representatives;

"(c) By threatening to refer to events of the past in a manner to cause him fright and to be willing to drop the claim he had against the company;

"(d) By demanding an appraisal of an undisputed claim which defendant had merely refused to pay;

"(e) By offering to pay him a compromise sum when the defendant's inconsistent proceedings were pointed out to it, and said offer was made without designating the loss or damage allowed, or that portion thereof which was rejected, if any.

"(f) By refusing to carry out the plans, suggested by plaintiff, of going over the losses item by item in such manner as to reach a speedy conclusion of the existence of the loss if a controversy should arise, plaintiff having offered to furnish proof on all property and show its value, should defendant elect to replace or repair or pay the expenses for putting said structure in a habitable condition, although defendant had formerly agreed upon such method and had undertaken to carry the agreement to a conclusion, when it discovered that but little difference, if any, arose in the said canvas.

"(g) By manipulating an attempt at an appraisal by causing the appointment of an umpire, when there

was no definite controversy between the persons chosen to make an appraisal;

"(h) By appointing one as umpire without plaintiff's knowledge or consent, or submitting his name for approval;

"(i) By manipulating the whole procedure after the umpire was chosen, by excluding plaintiff from the building, and holding secret meetings, refusing to take testimony which plaintiff offered and secretly taking testimony prejudicial to plaintiff, without giving him an opportunity to present the exact facts thereof;

"(j) By preparing an instrument, calling it 'The appraisal proceedings held under this claim,' 'signed' by 'umpire', the amount being $1,475, well knowing that plaintiff had no knowledge of an appraisal having been made or any award made whatsoever, which said letter is in words and figures as set forth in 'Exhibit A' hereto attached and made a part hereof;

"(k) By refusing to allow anything for putting the building in repair under the laws of the state of Washington, and the restrictions and requirements under the ordinances of the city of Seattle."

He further set out an ordinance of the city of Seattle, which provides, in substance, that when any building is damaged by fire, the superintendent of buildings of the city shall estimate the damage thereto, and if he finds it in excess of fifty per cent, the damaged portion shall not be reconstructed, except in accordance with the code of the city relating to the construction of new buildings; and alleged that the superintendent did examine the damage to the building, determined that it was damaged to exceed fifty per cent of its value and prescribed the manner in which it could be reconstructed; and that the cost of such reconstruction would "be at least $4,000, otherwise plaintiff has sustained the full loss of the building."

The company, answering the complaint, denied the matters alleged by which it was sought to charge it with fraud or malfeasance, and denied that there was

a total loss by the fire. It alleged affirmatively the clause of the contract of insurance providing for the appointment of appraisers to determine the amount of the loss, where the loss was partial; and further alleged the appointment of the appraisers, their award, and a tender of the amount of the award to appellant. The reply to the affirmative matter in the answer was in the nature of a plea in avoidance. The appellant denied knowledge of the conditions of the contract set out in the answer, denied that any disagreement arose over the amount of the fire loss, and alleged that there was no necessity for the appointment of appraisers; further alleging that he was forced by the company to name an appraiser; that he was not notified, or given an opportunity to ratify or object to the selection of an umpire; and was denied the opportunity to give evidence before the appraisers as to the amount of his loss. He made no charge impeaching the honesty, impartiality or good faith of the appraisers or umpire, other than what might be inferred from the allegations of his complaint to the effect that they were controlled by the appellant, and the allegation in his reply that he was denied the opportunity to give evidence of his loss by the appraisers.

On the issues so framed, a trial was entered upon by the court sitting with a jury. At the conclusion of the evidence, the trial court, on motion of the company, instructed the jury to return, and they did return, a verdict in favor of the appellant for the amount of the award returned by the appraisers. Judgment was entered on the verdict, and it is from this judgment that the appeal is prosecuted.

The appellant introduced evidence at the trial tending to show that the building was destroyed by the fire in such a degree as to prevent its reconstruction, and evidence tending to show that the personal property

was damaged from the same cause to an amount in excess of the insurance thereon. He also introduced testimony to the effect that the city officials of the city of Seattle refused to permit a reconstruction of the building on its original lines, but required a cement or stone foundation, and required certain of the rooms to be finished with plastering in place of the cloth and paper by which they were originally finished; the officials contending that the building, because of the fire, and because of its decay from long use, was damaged in excess of fifty per centum of its value. He also testified that he had been refused permission to offer testimony before the appraisers as to the amount of loss, and testified that he had appointed an appraiser on the demand of the insurance company under protest.

But, further than this, we find no evidence tending to substantiate the allegations of his complaint or reply. The evidence does not disclose that anything unusual occurred between himself and the insurance company after the fire loss was suffered. On the contrary, it appears that the ordinary course was pursued. The appellant made proofs of his loss, claiming a total destruction of the property and a loss in excess of the amount of the insurance. The company disputed the claims, contending that there was but a partial loss, and sought to adjust the differences in an amicable manner. Failing in this, they caused the loss to be appraised by their adjuster, and offered to pay to the appellant the amount the adjuster determined the amount to be. On the refusal of the appellant to take this sum, they demanded an appraisal by appraisers, under the terms of the policy. There is nothing tending to show that the company in any way interfered with, or sought to control, the action of the appraisers; and nothing tending to show that the appraisers did not act independently, impartially, and

in accordance with their honest judgment. Unless, therefore, there is some legal reason why the award should be set aside, there was no error in the action of the trial court.

[1] The appellant, however, suggests a number of legal reasons which he contends avoids the award. The first to be noticed is, that there was no cause for the selection of an umpire. The argument is that the umpire is to act only in the case the appraisers selected disagree, and that there is no room for his selection until such a disagreement arises. But, as we read the provision of the policy relating to the selection of an umpire, the appraisers acted in accordance therewith. The provision is that the appraisers, after their selection, "shall first select a competent and disinterested umpire," and that the appraisers "together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire." This clearly, we *think*, permits the selection of an umpire immediately after their appointment, and before any disagreement arises between them. It is true that, in this instance, there was no disagreement between the appraisers, and true that the umpire signed the award. But this does not invalidate the award. It is as much the award of the appraisers as it ·would have been had the umpire not joined therein.

[2] The next is that he was not consulted as to the selection of an umpire, or given an opportunity to ratify, or object to, the person selected. But this was not necessary. The power to select an umpire is vested in the appraisers selected, and the insured has no more voice therein than has the insurer. If the umpire, after his selection, is called upon to participate in the appraisal proceedings, and he takes sides with the appraiser opposed to the claims of the insured,

doubtless the insured may in this form of action question his honesty and good faith, and have the award set aside, if he can show that he acted from bias or prejudice, or acted partially or dishonestly. But even these objections are not open to the appellant in this proceeding. As we have shown, there was no disagreement between the appraisers, and no action on the part of the umpire which, in any way, affected the amount of the award.

[3] The next is that the award is void, because the appraisers took no evidence as to the amount of the loss suffered. But the contract, under which they were selected, does not prescribe their manner of action, and they were permitted to pursue such a course in this regard as their judgment dictated. Doubtless, they could lawfully have heard witnesses as to value, or as to any other matter of which they were in doubt, but there is no legal requirement that they do so. They are selected as experts, and may use their own judgment as to the manner they will proceed in ascertaining the amount of the loss.

[4] The next is that the appellant was not given notice of the time and place of the appraisement. But, if this was a necessary requirement, he has suffered no wrong from its omission. His own testimony shows that he was present at the time and place, and there is undisputed evidence that he pointed out the property damaged.

[5] The next contention is, if we understand the appellant, that because he at all times claimed a total loss, and his evidence tended to show a total loss, there was no room for an appraisal, since the statute in such cases fixes the amount of the insurance as the measure of the loss. But the contention is not tenable. The insurance company was as much entitled to dispute his claim of total loss as it would have been en-

titled to dispute his claim, had he claimed less than a total loss. The company could, therefore, plead as a defense to his action the plea it did interpose, namely, that the question as to the amount of the loss had been submitted to a tribunal, agreed upon between them, to determine the question, and that the tribunal agreed upon had made such an award. In other words, the appellant cannot, in this action, plead and offer evidence to prove a total loss, and thereby deprive the company of its defense that the differences between them have been determined in the manner agreed upon in the contract of insurance.

[6] The appraisers, in making up their estimates of the appellant's loss, did not take into consideration the action of the officials of the city of Seattle. They allowed the appellant only the sum they found that it would cost to reconstruct the building in the manner that it was originally constructed, and did not allow the sum it would cost to reconstruct it according to the changes required by the city officials. The appellant urges that this action of the appraisers is so far a departure from their duties as to avoid their award. But we cannot so consider it. Since the parties agreed in the contract of insurance that the amount of any loss by fire should be determined by appraisers, in case of a disagreement, it would seem that the award of the appraisers would be binding on both parties, whatever might be the nature of the items of loss they considered, or refused to consider, in making their award. But, assuming that the appellant may question the award in this respect, we cannot conclude that the item of loss here claimed was within the contemplation of the contract of insurance. As we have noted, the contract expressly provided that the insurance company should not be liable beyond the actual cash value of the property destroyed, and that, in no event, should

it exceed what it would cost to repair or replace the building with material of like kind and quality as that of which it was originally constructed. The requirement of the city went far beyond this. They required the foundations of the building to be entirely reconstructed and of different materials from that originally used; they required the upper parts of the building to be finished in a different manner than that in which it was originally finished; in fine, they required a practically new and more costly building. This, we cannot conclude, was within the contemplation of the contract.

The award having been fairly and honestly made, it was binding upon the parties. It cannot be successfully attacked by either party, merely because the party may feel that it is unjust to him. Our conclusion is, therefore, that the trial court did not err in instructing the jury to return a verdict in the appellant's favor for no more than the amount of the award, and that its judgment should be affirmed. It is so ordered.

MACKINTOSH, C. J., MITCHELL, FRENCH, and MAIN, JJ., concur.