[No. 28954-1-III.   Division Three.   March 3, 2011.]

REX ALLEMAND ET AL., *Respondents*, v. STATE FARM INSURANCE COMPANIES ET AL., *Appellants*.

*Steven M. Cronin*, for appellants.

*Douglas W. Nicholson* (of *Cone Gilreath Law Offices*), for respondents.

¶1 KORSMO, J. — This case revisits the recurring problem of fire-loss house repairs that must account for changes in building codes since the house was originally constructed, an issue that stretches back across Washington law for nine

decades. We conclude that the limitation on losses resulting from building code upgrades in this homeowners policy was effective under long-standing precedent and reverse the trial court's contrary judgment.

## FACTS

¶2 Respondents Rex and Brenda Allemand owned a house in Kittitas that was severely damaged by fire on June 20, 2007. Repair costs were estimated at $50,676.95. The house was built in 1940 and its foundation, crawl space, and electrical wiring did not comply with modern building codes. Due to those deficiencies, the city would not issue permits for the repairs. Instead, the building had to be razed.

¶3 It cost the Allemands $96,669.56 to replace the house under modern building requirements. Their State Farm homeowners policy provided a maximum of $89,866.00 under "Coverage A" to repair or replace the home "with similar construction." The policy also excluded "increased costs resulting from enforcement of any ordinance or law" including "construction repair or demolition" from coverage except as provided by optional "Option OL." That optional coverage provided an additional sum, equal to 10 percent of the policy maximum, for costs resulting from building code enforcement. The Allemands had purchased Option OL.

¶4 State Farm paid the Allemands $59,663.55, consisting of the estimated repair costs from the fire plus the maximum OL coverage for the code updates. The Allemands then filed an action for declaratory judgment and damages, arguing that State Farm was required to pay the maximum under both Coverage A and Option OL. [1]

¶5 The trial court agreed, reasoning that the Option OL limits for building code upgrades did not limit the amount available under Coverage A. It awarded the Allemands an

---

[1] The Allemands also alleged that they were underinsured. The trial court dismissed that claim with prejudice. The Allemands did not cross appeal the dismissal.

additional $37,001 under the policy and directed State Farm to pay for their attorney fees as well. State Farm then timely appealed to this court.

## ANALYSIS

¶6 The case turns on the meaning of the insurance policy. Well settled rules govern our review.

¶7 Interpretation of an insurance policy is a question of law reviewed *de novo. Woo v. Fireman's Fund Ins. Co.,* 161 Wn.2d 43, 52, 164 P.3d 454 (2007). Insurance policies are construed as contracts, so policy terms are interpreted according to basic contract principles. *Weyerhaeuser Co. v. Commercial Union Ins. Co.,* 142 Wn.2d 654, 665-666, 15 P.3d 115 (2000). The policy is considered as a whole and is given a " 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.' " *Id.* at 666 (internal quotation marks omitted) (quoting *Am. Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co.,* 134 Wn.2d 413, 427, 951 P.2d 250 (1998)). If the language is clear, the court must enforce the policy as written and may not create ambiguity where none exists. *Quadrant Corp. v. Am. States Ins. Co.,* 154 Wn.2d 165, 171, 110 P.3d 733 (2005). A clause is considered ambiguous only if it is susceptible to two or more reasonable interpretations. *Id.* If an ambiguity exists, the clause is construed in favor of the insured. *Id.* at 172. However, "the expectations of the insured cannot override the plain language of the contract." *Id.*

¶8 The question of whether insurance coverage extends to costs necessary to bring a remodeled/rebuilt home into compliance with modern building codes has been discussed in a series of cases. Not surprisingly, the parties can each find some support for their position in existing case law.

¶9 The Allemands rely upon the earliest of the modern Washington cases, *Starczewski v. Unigard Insurance Group*, 61 Wn. App. 267, 810 P.2d 58, *review denied*, 117 Wn.2d 1017 (1991). There, Division One of this court heard several arguments from property owners whose duplex, a nonconforming property, had been severely damaged in a fire. *Id.* at 269. Their policy provided for loss payments up to the actual cash value of the property or " 'the amount necessary to repair or replace the damaged property.' " *Id.* The owners raised a Consumer Protection Act (ch. 19.86 RCW) claim based, in part, on the insurance company's refusal to include the costs of bringing the property into compliance with building codes as a component of repair costs. In rejecting one of the insurer's counter arguments, the court held that the policy's "repair or replace" language necessarily included compliance with the building codes. *Id.* at 274. It then ruled that the policy's exclusion for losses caused by compliance with laws was in conflict with the "repair or replace" language and was thus void. *Id.* The exclusion also conflicted with the efficient proximate cause rule under the facts of that case. *Id.*

¶10 Division One revisited the issue in *Roberts v. Allied Group Insurance Co.*, 79 Wn. App. 323, 901 P.2d 317 (1995). There a home had been destroyed by fire. The homeowner had a policy guaranteeing replacement cost " 'for like construction.' " *Id.* at 325. The policy defined replacement cost as repairing or replacing the damaged property " 'with new materials of like kind and quality.' " *Id.* The court distinguished *Starczewski* on the basis that its policy had not been limited to the "like kind" of repair. *Id.* Building code compliance was not included in the definition of "like kind." *Id.* (citing *Gouin v. Nw. Nat'l Ins. Co. of Milwaukee*, 145 Wash. 199, 259 P. 387 (1927)).

¶11 *Gouin* involved a house damaged by fire in Seattle. 145 Wash. at 200. The owner's insurance covered replace-

ment or repair "of like kind [or] quality." *Id.* Modern building codes required the house to have a cement or stone foundation and required plaster walls; the previous house had no foundation and had cloth walls. *Id.* at 205. The property owner appealed a jury verdict upholding an appraisal panel's award. *Id.* at 204. Among the issues raised by the owner was a contention that the verdict was insufficient because the award did not include the cost to bring the repaired building up to code. *Id.* at 208. The Washington Supreme Court declared that such costs were not contemplated by the parties and the damages were limited to the actual cash value of the property or the cost to repair or replace with "material of like kind." *Id.* at 208-209. In such circumstances, the building code requirements were not covered:

> The requirements of the city went far beyond this. They required the foundations of the building to be entirely reconstructed and of different materials from that originally used; they required the upper parts of the building to be finished in a different manner than that in which it was originally finished; in fine, they required a practically new and more costly building. This, we cannot conclude, was within the contemplation of the contract.

*Id.* at 209.

¶12 In light of *Gouin*, the *Roberts* court summarily rejected the homeowner's attempt to apply *Starczewski* to the "like construction" language used in that policy. 79 Wn. App. at 325. Instead, the court characterized the *Starczewski* discussion as *dicta* and noted that case had declined to follow contrary authority because its policy lacked the "like kind and quality" language found in the earlier cases. *Id.*

¶13 Division Two of this court likewise refused to apply *Starczewski* in *Dombrosky v. Farmers Insurance Co. of Washington*, 84 Wn. App. 245, 928 P.2d 1127 (1996), *review denied*, 131 Wn.2d 1018 (1997). There the policy had defined replacement cost in terms of " 'equivalent construction' " and had excluded any costs related to enforcement of

ordinances to repair or reconstruct the property. *Id.* at 257. The homeowners contended that *Starczewski* had compelled coverage for costs increased by building code compliance. *Id.* at 258. The *Dombrosky* court again characterized the *Starczewski* discussion as *dicta* and instead chose to follow *Roberts. Id.* The court concluded that "equivalent construction" had the same effect as "like kind and quality." *Id.* at 259.

¶14 This division visited the issue in *DePhelps v. Safeco Insurance Co. of America*, 116 Wn. App. 441, 65 P.3d 1234 (2003). There the homeowners' policy also defined replacement cost in terms of " 'equivalent construction,' " and the insurance company argued that *Roberts* and *Dombrosky* meant that it was not required to cover costs associated with code upgrades. *Id.* at 449 (emphasis omitted). However, the policy also indicated that damages would be settled " 'on the basis of any ordinance or law that regulates the construction, repair or demolition of this property.' " *Id.* (emphasis omitted). This court had no difficulty distinguishing the earlier cases and concluding that this provision "expressly covers the cost of compliance with ordinances and building laws." *Id.*

¶15 The parties understandably draw their battle lines among the modern foursome of cases, with the Allemands using *Starczewski* and *DePhelps*, while State Farm relies upon *Roberts* and *Dombrosky*. As all of those cases show, the ultimate controlling language is that found in the policy. The Coverage A language states in part that

a.  We will pay the cost to repair or replace with similar construction and for the same use on the premises . . . subject to the following:

 . . . .

(4)  we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under Option OL – Building Ordinance or Law Coverage.

Clerk's Papers (CP) at 23.

¶16 The Option OL coverage provides in part:

### 1. Coverage Provided.

> The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss . . . . This is an additional amount of insurance and applies only to the dwelling.

### 2. Damaged Portions of Dwelling.

> When the dwelling covered under **COVERAGE A – DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

CP at 24.

¶17 The policy at issue here covers "similar construction" and is the same as the "like" construction at issue in *Gouin* and *Roberts* and the "equivalent" construction in *DePhelps* and *Dombrosky*. Thus, the Coverage A component of this policy does not include building code upgrades as the policy in *Starczewski* did. Instead, Coverage A of the policy expressly indicates that it does cover building code upgrades caused by the same loss only under the optional OL coverage[2] and to the extent provided in that coverage. That makes this case somewhat closer factually to *DePhelps* in that there is explicit coverage for code upgrades. Unlike that case, however, the policy here expressly limits the code upgrade coverage to 10 percent of the policy maximum.

---

[2] This provision recognizes the efficient proximate cause rule; the Allemands' argument that the policy conflicts with that rule is without merit. The policy actually applies the rule and covers building code upgrades that are required when repairing a covered loss.

¶18 In light of the foregoing authority, the policy language is clear and this court is not in a position to find it ambiguous. *Quadrant Corp.*, 154 Wn.2d 165. State Farm's original obligation under Coverage A is to provide "similar construction" in rebuilding the home. Unlike *Starczewski*, that phrase does not include paying for required code upgrades. Instead, the policy provides for necessary upgrades by Option OL. That coverage is the sole source of the obligation to pay for bringing the remodeled home up to code. But that coverage is limited to the 10 percent of Coverage A that the Allemands purchased. The necessary upgrades required more than that figure and State Farm thus properly tendered its limits under that coverage. It was not required to pay more for the upgrades.

¶19 The Allemands also argue that the Option OL coverage is ambiguous because it makes reference to the policy limits shown in the "Declarations," but the coverage limits page is not entitled "Declarations" nor is that word used on the page. Any confusion they may have had—and there has been no factual finding on that point—does not create an ambiguity. They were aware from Option OL that the coverage was limited. They were also aware from the cover page, even if they did not know what a "Declarations" was, what the limits were. Even if there was subjective confusion on this point, there was no ambiguity. The cover page, however denominated, expressly stated the limits of both Coverage A and Option OL. There was no ambiguity.

¶20 The judgment is reversed.

KULIK, C.J., and SIDDOWAY, J., concur.

Review granted at 171 Wn.2d 1028 (2011).