[No. 57206-2. En Banc. February 28, 1991.]

RICHARD G. NORD, ET AL, *Petitioners,* v. SHORELINE SAVINGS ASSOCIATION, ET AL, *Defendants,* ROBERT MONSON, *Respondent.*

*M. Scott Dutton*, for petitioners.

*Ralph I. Freese*, for respondent.

*Sheila Malloy Huber, Bryan P. Harnetiaux*, and *Robert H. Whaley* on behalf of Washington State Trial Lawyers Association, amicus curiae for petitioners.

*Mark E. Cavanagh* on behalf of Washington Defense Trial Lawyers, amicus curiae for respondent.

BRACHTENBACH, J.—The issue is whether recovery for emotional distress is allowable in an action for an intentional tort other than outrage absent proof that the emotional distress is "severe." The Court of Appeals held that severe emotional distress must be shown. *Nord v. Shoreline Sav. Ass'n,* 57 Wn. App. 151, 163, 787 P.2d 66 (1990). We reverse.

Richard Nord and Roger Childs (plaintiffs) and Robert Monson (defendant) formed a corporation in 1977 to develop and sell real estate. Financial difficulties led to the breakup of the corporation. In 1981 each party took over some of the troubled projects as individual business ventures. Defendant received a development project at Lake

Stevens, which he sought to complete through his solely owned corporation, Shomon Homes, Inc.

The parties were also partners in a partnership which acted as a holding company for completed development projects and other real estate developed by the parties. This partnership remained intact during the relevant time period. One asset of the partnership was Bo Van, a group of fourplexes maintained as rental units. The partnership's interest in Bo Van was subject to a first deed of trust and mortgage held by Shoreline Savings Association.

Defendant needed funds to complete the Lake Stevens Project, and asked Shoreline for additional financing. Shoreline refused. Defendant then obtained a loan commitment from Cascade Savings, a part of which was to be used to pay off the first mortgage on Bo Van. The Cascade loan commitment was contingent on defendant's obtaining financing from some other lender for a sum needed to pay off a sewer assessment at Lake Stevens. Defendant eventually gained Shoreline's agreement to finance the sewer assessment and to subordinate its loan to Cascade's loan, on condition that Shoreline be granted second deeds of trust on the Bo Van and Lake Stevens properties. Defendant alone signed, as president of Shomon Homes, the second deed of trust. Plaintiffs testified they did not consent to this transaction.

The financial difficulties of the parties continued, and about May 1982 defendant suggested to plaintiffs that they let the Bo Van property go back to Shoreline. Plaintiffs did not want to do so, thinking they had equity in the property. After attempts to sell the property at a price which their realtor said was too high but was insisted upon by defendant, the parties executed a quitclaim deed in favor of Shoreline in lieu of a deed of foreclosure.

In 1984 plaintiffs mortgaged their homes to satisfy debt for which defendant was also liable. Plaintiff Nord ultimately lost his house.

In the spring of 1986, while looking into another matter, plaintiff Nord learned of the second deed of trust on the Bo

Van property (the deed was originally filed in the wrong county by defendant). Plaintiffs sued defendant and others asserting several theories of liability.

Because of dismissal of claims and parties, by the time of trial the present parties were the only ones who proceeded to trial. During the 6–day trial, plaintiffs testified, in relevant part, as follows: Nord testified that when he began understanding what happened he was "shocked," and "very hurt," Report of Proceedings (July 7, 1988), at 49; he was "upset" and "incensed," Report of Proceedings (July 7, 1988), at 90. He testified that he found it very disturbing that they could have sold Bo Van. Report of Proceedings (July 7, 1988), at 140. He also testified that he trusted defendant "completely." Report of Proceedings (July 8, 1988), at 16, 17. Nord believed defendant when he said the property had to be deeded back to the bank because it would not sell. Report of Proceedings (July 8, 1988), at 26. Nord and Childs believed they had been duped. Report of Proceedings (July 7, 1988), at 122. Nord stated "I think we lost that property because Mr. Monson gave us advice and the advice served his best interest. I think that's very unfortunate. I just feel very badly about everything." Report of Proceedings (July 7, 1988), at 118. Childs testified that he was astonished and angered when he learned of defendant's Bo Van second. Report of Proceedings (July 8, 1988), at 145.

Prior to resting, plaintiffs took a voluntary nonsuit on all claims remaining against defendant except fraud and breach of fiduciary duty. At close of trial, the trial court refused defendant's proposed jury instructions which defined emotional distress damages for the tort of outrage and for breach of contract. Clerk's Papers, at 229 (outrage), Clerk's Papers, at 230 (breach of contract) (Clerk's Papers filed May 25, 1989, in the Court of Appeals). The court instructed the jury that if it found that "defendant engaged in intentional wrongdoing which proximately caused damage to plaintiffs," then its verdict should include "[a]n amount to compensate plaintiffs for the emotional distress,

if any, they suffered as a result of defendant's wrongful conduct." Instruction 13, Clerk's Papers, at 265 (filed May 25, 1989, in the Court of Appeals).

The jury returned a verdict in favor of plaintiffs for $5,000 in economic damages and $15,000 each in emotional distress damages.

Defendant moved for a judgment n.o.v. or a new trial. The trial court denied the motion. Defendant appealed, raising a number of issues. The Court of Appeals affirmed the jury award of economic damages, but reversed the award of emotional distress damages, holding that plaintiffs must show "severe" emotional distress in order to recover such damages, and that plaintiffs here had not done so. Plaintiffs petitioned for review; the petition was granted.

Plaintiffs maintain that the Court of Appeals erred in holding that emotional distress must be severe before they are compensable in an action based upon intentional wrongdoing.

"This court has liberally construed damages for emotional distress as being available merely upon proof of 'an intentional tort'." *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 916, 726 P.2d 434 (1986); *Cherberg v. Peoples Nat'l Bank*, 88 Wn.2d 595, 602, 564 P.2d 1137 (1977); *see also Hunsley v. Giard*, 87 Wn.2d 424, 431, 553 P.2d 1096 (1976). In none of these cases has the court required that emotional distress be severe in order to be compensable as an element of damages based upon intentional wrongdoing.

However, the Court of Appeals relied upon language in *Browning v. Slenderella Sys.*, 54 Wn.2d 440, 341 P.2d 859 (1959) for the proposition that a plaintiff must show *severe* emotional distress to recover emotional distress damages for injury resulting from an intentional tort. The Court of Appeals concluded that in this case there is no evidence that plaintiffs suffered severe emotional distress.

In *Browning,* a black woman was not given a courtesy demonstration of salon treatments for which she made arrangements. The court held that she could sue for damages based upon violation of the public accommodation

laws, notwithstanding the fact that they were criminal in nature. *Browning,* at 445. The court also held that damages could be awarded "for mental or emotional distress, even in the absence of any physical injury, when caused by a wrongful act intentionally done." *Browning,* at 446. The court said, however, that not all emotional distress warrants a judgment for substantial damages, rather, only "severe emotional distress" will suffice. *Browning,* at 447. The court relied upon the 1948 supplement to the Restatement of Torts § 46, which stated one is liable for "intentionally caus[ing] severe emotional distress to another . . .". *Browning,* at 447. This section was changed from a prior version, and represented the then current state of the evolving law of intentional infliction of emotional distress.[1] *Browning* thus required the degree of emotional distress which must be shown to establish liability for the independent tort of intentional infliction of emotional distress (outrage).

By imposing the severity requirement, the Court of Appeals effectively required the same degree of emotional distress required to establish liability for intentional infliction of emotional distress to be shown to recover compensatory emotional distress damages for an intentional wrongdoing other than the tort of outrage.

 Despite language in *Browning* which seemingly supports the Court of Appeals' decision, we do not agree that it dictates the rule which the Court of Appeals adopted. In cases preceding and succeeding *Browning* emotional distress damages have been allowed as part of the recovery for intentional wrongdoing without reference to whether the emotional distress claimed was "severe." Compensatory emotional distress damages have been awarded in cases involving actions for public nuisance, *Miotke v. Spokane,*

---

[1]Section 46 now provides for liability where one by "extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another . . .". Restatement (Second) of Torts § 46 (1965).

101 Wn.2d 307, 678 P.2d 803 (1984); intentional interference with business relationships, *Cherberg;* noncompliance with the fair credit reporting act, *Rasor v. Retail Credit Co.,* 87 Wn.2d 516, 554 P.2d 1041 (1976); nuisance, *Wilson v. Key Tronic Corp.,* 40 Wn. App. 802, 701 P.2d 518 (1985), common law fraud, *McRae v. Bolstad,* 32 Wn. App. 173, 646 P.2d 771 (1982), *aff'd on other grounds,* 101 Wn.2d 161, 676 P.2d 496 (1984); malicious prosecution, *Odom v. Williams,* 74 Wn.2d 714, 446 P.2d 335 (1968); landlord's unlawful entry, *Nordgren v. Lawrence,* 74 Wash. 305, 133 P. 436 (1913); desecration of deceased's body, *Wright v. Beardsley,* 46 Wash. 16, 89 P. 172 (1907); wrongful eviction, *McClure v. Campbell,* 42 Wash. 252, 84 P. 825 (1906); defamation of character, *Davis v. Tacoma Ry. & Power Co.,* 35 Wash. 203, 77 P. 209 (1904); and wrongful expulsion by a railroad carrier, *Willson v. Northern Pac. R.R.,* 5 Wash. 621, 32 P. 468, 34 P. 146 (1893).

To the extent language in *Browning* can be read as requiring the rule espoused by the Court of Appeals, it is disapproved.

Where emotional distress is asserted, this court has several times noted the distinction to be drawn between what is required for a finding of liability, and the recoverable damages resulting from an injury. In *Cagle,* at 920, the court emphasized that once plaintiff proves defendant's intentional wrongful conduct (the tort of wrongful termination, in that case), plaintiff is only required to prove emotional distress in order to recover the damages attributable to the wrongful act. *Cagle,* at 920. *See also Dean v. Metropolitan Seattle,* 104 Wn.2d 627, 640–41, 708 P.2d 393 (1985); *Hunsley,* at 436.

This general analysis is consistent with the Restatement (Second) of Torts § 905 (1965), which provides that compensatory damages for nonpecuniary harm may be awarded for emotional distress. Comment *c* to § 905 explains that "[w]hether there can be action merely for harm to the feelings presents a question of the existence of the cause of action and is not a problem of the amount of the damages."

In short, the reasoning of the Court of Appeals is inconsistent with the majority of Washington cases allowing recovery for emotional distress damages where intentional wrongdoing other than outrage is the basis for recovery. The holding is also inconsistent with the notion that proof of emotional distress damages, as a component of compensable damages resulting from the harm, is distinguishable from the proof required for liability for outrage. While severity of emotional distress must be shown to establish the elements of the tort of outrage, it is not a prerequisite to recovery of emotional distress damages for injury resulting from other intentional wrongdoing.

We reverse the Court of Appeals on this issue and hold that there is no requirement that a plaintiff must always show "severe" emotional distress before emotional distress damages may be awarded upon proof of an intentional tort.

Defendant argued to the Court of Appeals that fraud and breach of fiduciary duty do not give rise to compensable emotional distress damages in any event. In light of its holding that emotional distress must be severe, the Court of Appeals did not reach this question. We also do not reach this question.

Defendant did not object to the emotional distress damages instruction on the basis that such damages are not awardable for fraud or breach of fiduciary duty. Instead, defendant argued that the instruction was erroneous because it did not require a showing of objective symptoms, and because the evidence did not support the instruction. Report of Proceedings (July 14, 1988), at 137–41. However, the objective symptom requirement applies in cases where negligent infliction of emotional distress is asserted, and goes to proof of liability, not damages. *Hunsley,* at 436; *see generally Cagle,* at 920. The trial court properly rejected defendant's claim that objective symptoms must be shown before compensatory emotional distress damages may be awarded. As to defendant's claim that the evidence did not support an award of emotional distress damages, we uphold

that award, thus confirming the trial court's rejection of this objection.

█ Because defendant failed to except to the emotional distress damages instruction on the basis now asserted,[2] he failed to apprise the trial court of the claimed error and thus failed to preserve it for review. *See Davis v. Globe Mach. Mfg. Co.,* 102 Wn.2d 68, 75, 684 P.2d 692 (1984). We therefore do not reach defendant's argument that emotional distress damages are not awardable based on fraud or breach of fiduciary duty. We make no comment as to what our holding would have been on this matter had defendant preserved the claimed error.

The second issue we address regards the sufficiency of the evidence supporting the jury's award for emotional distress. Defendant moved for a judgment notwithstanding the verdict and for a new trial, maintaining in part that the jury verdict was contrary to the evidence. *See* CR 50(c) and 59(a). The trial court denied the motion, and defendant appealed the denial.

█ "A judgment n.o.v. is proper when, viewing the evidence and reasonable inferences therefrom most favorably to the nonmoving party, the court can say as a matter of law that there is no substantial evidence supporting the verdict." *Cowsert v. Crowley Maritime Corp.,* 101 Wn.2d 402, 405, 680 P.2d 46 (1984). Substantial evidence is evidence which "would convince an unprejudiced, thinking mind of the truth of the declared premise." *Cowsert,* at 405.

██ As to a motion for a new trial based on a claim of excessive damages, CR 59(a)(5), the damages must be so excessive as to unmistakably indicate that the verdict was the result of passion or prejudice. As to a claim that the evidence does not justify an award of damages, CR 59(a)(7),

---

[2]Defendant did propose other jury instructions relating to emotional distress. Defendant's proposed instructions defined emotional distress damages for the tort of outrage and breach of contract. The trial court properly refused these instructions, in that plaintiffs' only claims going to the jury involved fraud and breach of fiduciary duty. *See Haslund v. Seattle,* 86 Wn.2d 607, 613, 547 P.2d 1221 (1976).

there must be no evidence or reasonable inference from the evidence to justify the award.

Under these standards it is a close question whether the testimony that plaintiffs were shocked, angered, and upset is sufficient evidence supporting the verdict. However, we conclude that given the close relationship of the parties, evidence supporting the conclusion that defendant "engineered" a default to conceal his wrongful pledge of the Bo Van property for his personal use at a time when the parties were under serious financial strain, thus impairing any equity the partners had in the property, and evidence that both plaintiffs took out mortgages on their homes in part to satisfy debt of all three parties, while not knowing of defendant's deceit, in conjunction with the testimony about feeling distressed, is sufficient to sustain the verdict. Moreover, we do not find that the amount is so excessive as to be outside the range of evidence or so great as to shock the court's conscience. *See Rasor v. Retail Credit Co.*, 87 Wn.2d 516, 531, 554 P.2d 1041 (1976).

The Court of Appeals is reversed; the trial judgment is affirmed.

DORE, C.J., UTTER, DOLLIVER, ANDERSEN, DURHAM, SMITH, and GUY, JJ., and CALLOW, J. Pro Tem., concur.

Reconsideration denied May 16, 1991.