928 P.2d 1127 (1996)
84 Wash.App. 245
Vincent DOMBROSKY and Ellen Dombrosky, husband and wife, Appellants,
v.
FARMERS INSURANCE COMPANY OF WASHINGTON, a Washington corporation, Respondent.
No. 19081-8-II.
Court of Appeals of Washington, Division 2.
November 8, 1996.
Publication Ordered December 6, 1996.
As Amended February 7, 1997.
*1131 Thomas Lether, Seattle, Mark Scott Cole, Clarke Bovingdon & Cole, Seattle, for Respondent.
Michael Eugene Ritchie, Dolack Hansler Loran Rowan & Ritchie Ps, Tacoma, for Appellants. *1128 *1129
*1130 HOUGHTON, Acting Chief Judge.
Vincent and Ellen Dombroskys' home was damaged by fire. The home was covered under a Farmers' insurance policy. After a protracted dispute with Farmers over the nature and extent of coverage under the policy, the Dombroskys filed suit against Farmers, alleging breach of contract, insurance bad faith, violations of the Consumer Protection Act, and various tort claims. They also requested prejudgment interest. All of their claims were dismissed on summary judgment and the Dombroskys now appeal that decision. We affirm.

FACTS
On December 20, 1990, a fire damaged the Roy home owned by the Dombroskys. At the time of the fire, the Dombroskys were living in Yuma, Arizona for the winter with their two minor daughters. Their son, Steven Dombrosky, and his family were living in the Roy home. The fire started in the chimney and then spread through the roof and other portions of the residence. In the effort to extinguish the fire, the Roy Fire Department used approximately 7,000 gallons of water and three pumper trucks.
The Dombroskys were covered under a Farmers "Special Form Homeowners Package Policy" at the time of the fire. This policy contained provisions to cover the structure, repairs to prevent further damage after a loss, damage to landscaping around the structure, living expenses incurred after a loss, and, by endorsement, replacement costs for damaged personal property within the structure. The limits of the policy were $115,000 for damage to the residence, $5,750 for damage to landscaping, and $80,500 for personal property losses.
Following the fire, the loss was reported to Farmers with an initial claim request. This claim included loss to the structure, landscaping damages, loss of personal property, and additional living expense. Farmers' claims representative Bruce Hubbard contacted Steve Dombrosky on December 27, 1990. Hubbard was granted permission to obtain an appraisal of the property and to retain the services of a contractor to perform temporary repairs on the structure to prevent further weather damage.
Several construction companies were contacted to provide bids for repair. At least two of these, Dray's DMF, Inc. and Modern Builders, told Farmers that because of the numerous building code violations at the site, it would not be possible to obtain a building permit to repair the structure. Dray's was paid to prepare a repair estimate anyway and provided one on March 2, 1991 in the amount of $50,252.33.
On February 22, 1991, Farmers tendered a check for $28,000 to the Dombroskys, which was returned on February 28. The Dombroskys claimed that they did not agree with the appraisal and bid. Farmers proceeded to pay for an additional appraisal and bid. Guilford and Associates provided an actual cash value appraisal of $68,000. Great American Homebuilders, Inc. estimated the cost to replace the structure at $94,500.
On April 3, 1991, a check was tendered to the Dombroskys for $22,253.33, representing the difference between the February 22 payment and the Dray's DMF, Inc. repair estimate.[1] This check was returned April 12, *1132 1991, because the Dombroskys did not agree with the amount of loss as determined by Farmers.
Throughout this exchange, the parties disagreed as to the nature of the payments. The Dombroskys cite several communications from Farmers to assert that the payments were made only as partial payments and did not alter their remaining claims. Farmers asserts the payments were full amounts intended to resolve the claim and that the Dombroskys knew the terms of the contract regarding the prerequisites to receive additional funds for replacement expense. The Dombroskys eventually cashed a replacement to the check issued on April 3, 1991 in the amount of $22,253.33.
In response to inventory sheets on personal property damaged in the fire, Farmers tendered a check to the Dombroskys on April 26, 1991, for $37,959. The parties disputed certain items of personal property not included in the payment, the characterization of some personal items under the policy, and the method by which Farmers calculated depreciation on some of the items. Farmers informed the Dombroskys they would be entitled to additional replacement costs once the items were replaced and proper receipts were submitted.
On July 3, 1991, Farmers' attorney requested an appraisal of the loss. Farmers denied the request. The Dombroskys presented more receipts for loss associated with the landscaping, pool, and additional items of personal contents.
The Dombroskys purchased a recreational vehicle and a new home in Arizona in December of 1991. The source of the funds for these items is in dispute. The Dombroskys claim they obtained financing, while Farmers asserts they used the insurance proceeds. The Dombroskys returned to Arizona and spent no more funds to repair or replace the structure in Roy.
The Dombroskys sued Farmers alleging breach of contract, negligence, insurance bad faith, outrage, and violations of the Consumer Protection Act. Farmers sought and obtained a court ordered appraisal hearing. Fred Butterworth was appointed to act as umpire.[2]
The parties agreed that an appraisal panel would determine alternate values of the loss and the trial court would decide the amount owed under the insurance contract. The parties further agreed that the appraisal would not consider contents, additional living expense, or the landscaping claim. The panel made the following findings:
The actual cash value of the structures at the time of the fire: $32,000;
The replacement value of the structures without the additional cost for compliance with new building code requirements: $75,000;
The replacement value of the structures including the additional cost for compliance with new building code requirements: $85,000.
This award was affirmed by the trial court. The exact amount owed under the policy was reserved for further motion.
Farmers moved for summary judgment, requesting a finding that the Dombroskys were not entitled to additional replacement costs for the structure or costs for compliance with new building codes. In addition, Farmers sought dismissal of the Dombroskys' claims of bad faith, violation of the Consumer Protection Act, negligence, outrage, and the negligent infliction of emotional distress. The motion was granted. The Dombroskys' motion for reconsideration was denied.
The Dombroskys brought remaining claims involving the additional contents recovery, additional living expense, and landscaping portions of the policy. Farmers attempted on several occasions to deposit funds in the court registry, which the Dombroskys *1133 declined. The Dombroskys then moved for summary judgment regarding the contents and the landscaping claims. This motion and Farmers cross motion on the same issues were denied.
Farmers moved for and was granted an order for appraisal of the remaining claims. The appraisal panel entered an award in favor of the Dombroskys of $2,095.50 for additional living expenses. The panel concluded the Dombroskys were not entitled to additional recovery for contents or landscaping. The award was reduced to judgment and the action was dismissed. The Dombroskys appeal.

ANALYSIS
The standard of review of an order of summary judgment is de novo. Mountain Park Homeowners Ass'n, Inc. v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994). A summary judgment motion brought under CR 56 can be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). The court must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. Wilson, 98 Wash.2d at 437, 656 P.2d 1030.
Once the moving party has submitted adequate affidavits, the burden shifts to the nonmoving party to set forth specific facts that sufficiently rebut the moving party's contentions and disclose the existence of a material issue of fact. Seven Gables Corp. v. MGM/UA Entertainment Co., 106 Wash.2d 1, 13, 721 P.2d 1 (1986). The nonmoving party may not, however, rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value. Seven Gables, 106 Wash.2d at 13, 721 P.2d 1. The court should grant the motion only if, from all the evidence, reasonable persons could reach but one conclusion. Seven Gables, 106 Wash.2d at 13, 721 P.2d 1.
Replacement Cost
The Dombroskys' policy contains the following language:
Loss Settlement
a. Except as stated in Item b, covered loss to buildings under Coverage A and B will be settled at replacement cost without deduction for depreciation subject to the following:
. . . .
(2) When the cost to repair or replace is more than $1,000 or more than 5% of the limit of insurance in this policy on the building, whichever is less, we shall pay no more than the actual cash value of the damage until repair or replacement is completed.
(Emphasis in original).
This language establishes a process whereby the insurer first pays the actual cash value of the property to the insured. If repair or replacement of the property amounts to more than the actual cash value, an additional claim is made to collect that loss, up to the policy limits. This type of limitation has been upheld by our Supreme Court. Hess v. North Pacific Ins. Co.,[3] 122 Wash.2d 180, 183-84, 859 P.2d 586 (1993).
The Dombroskys have presented no evidence that they have acted to repair or replace the structure. They now reside in Arizona and the Roy property remains in the same condition as immediately after the fire. Therefore, under the contract, the Dombroskys are limited to the actual cash value of the property.
Waiver
The Dombroskys claim that Farmers waived its right to assert the policy language *1134 regarding loss settlement. The doctrine of waiver ordinarily applies to all rights or privileges to which a person is legally entitled. A waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. Bowman v. Webster, 44 Wash.2d 667, 669, 269 P.2d 960 (1954). It may result from an express agreement, or be inferred from circumstances indicating an intent to waive. Bowman, 44 Wash.2d at 669, 269 P.2d 960. Thus waiver is essentially a matter of intention. Negligence, oversight or thoughtlessness does not create it. Reynolds Metals Co. v. Electric Smith Constr. & Equip. Co., 4 Wash.App. 695, 700, 483 P.2d 880 (1971) (citing Alsens American Portland Cement Works v. Degnon Contracting Co., 222 N.Y. 34, 37, 118 N.E. 210 (1917)). The intention to relinquish the right or advantage must be proved, and the burden is on the party claiming waiver. Rhodes v. Gould, 19 Wash.App. 437, 441, 576 P.2d 914, review denied, 90 Wash.2d 1026 (1978).
The Dombroskys' primary assertion is that Farmers waived its right to limit recovery to actual cash value by demanding an appraisal award. The Dombroskys claim this activates language in the policy which states:
14. Loss Payment. We shall adjust all losses with you. We shall pay you unless another payee is named in the policy. We shall pay within 60 days after:
a. we reach agreement with you; or
b. a court judgment; or
c. an appraisal award.
But the Dombroskys fail to note that the arbitration award specifically reserved the right of the court to determine at a later proceeding the amount owed under the policy. The trial court ruled that no additional amount was owed under the policy. In addition, in the letter demanding arbitration, Farmers specifically reserved all rights and defenses.
Finally, the Dombroskys make several claims regarding their correspondence with Farmers in which they were told they could claim additional funds at a later date. Nothing in the record indicates that Farmers intended to offer anything other than repair and replacement costs above the actual cash value, as provided in the policy. The Dombroskys argument on waiver fails.
Estoppel
The Dombroskys further contend that Farmers is equitably estopped from relying upon the loss settlement provisions. The elements of equitable estoppel include:
(1) an admission, statement, or act inconsistent with the claim afterwards asserted,
(2) action by the other party on the faith of such admission, statement, or act, and
(3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.
McDaniels v. Carlson, 108 Wash.2d 299, 308, 738 P.2d 254 (1987) (quoting Harbor Air Serv., Inc. v. State Department of Revenue, 88 Wash.2d 359, 366-67, 560 P.2d 1145 (1977)).
Because equitable estoppel is not a favored doctrine, the party asserting estoppel must prove each of its elements by clear, cogent, and convincing evidence, that is, by evidence of sufficient persuasive impact as to cause the trier of fact to believe that the fact at issue is highly probable. Colonial Imports, Inc. v. Carlton Northwest, Inc., 121 Wash.2d 726, 734-35, 853 P.2d 913 (1993). Further, no estoppel arises if the injured party had equal opportunity to determine the facts. Public Util. Dist. No. 1 v. W.P.P.S.S., 104 Wash.2d 353, 365, 705 P.2d 1195 (1985).
The Dombroskys fail to present sufficient evidence to establish equitable estoppel. The record does not indicate the inconsistent statements required to meet the estoppel elements. In addition, if the Dombroskys were overpaid on this claim, as the trial court determined, there is no injury. Finally, the Dombroskys had a copy of the policy in their possession, and were repeatedly told by Farmers agents how the repair and replace provisions worked. The Dombroskys had an affirmative duty under Washington *1135 law to read their policy and be on notice of the terms and conditions of the policy. Deacy v. College Life Ins. Co., 25 Wash.App. 419, 423-24, 607 P.2d 1239 (1980). The Dombroskys' equitable estoppel argument fails.
Additional Replacement Cost Based on New Building Code Requirements
In addition to their waiver and estoppel theories, the Dombroskys claim they are entitled to recover the additional costs mandated by building codes enacted after they moved into the structure. They contend this amount is a necessary component of full replacement cost under the policy. According to the appraisal award, the difference in replacement cost associated with compliance with the new building codes is $10,000.
The relevant language in the Dombrosky policy provides:
We do not cover direct or indirect loss from:
1. Enforcement of any ordinance or law regulating construction, repair, or demolition of the building, or other structure, unless endorsed to this policy.
In addition, the portion of the Dombrosky policy addressing payment of replacement costs provides:
(1) Settlement under replacement cost will not be more than the smallest of the following:
. . . .
(b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises.
The Dombroskys rely on Starczewski v. Unigard Ins. Group, 61 Wash.App. 267, 810 P.2d 58 (1991), review denied, 117 Wash.2d 1017, 818 P.2d 1099 (1991), for the proposition that their policy language covers the additional cost of complying with the new building code. In Starczewski, a duplex owned by the insured suffered damage as the result of a fire. Starczewski, 61 Wash.App. at 269, 810 P.2d 58. But in Starczewski, the policy language was more general than in the instant case. It provided:
Loss Settlement. Covered Property losses are settled at actual cash value at the time of loss but not exceeding the amount necessary to repair or replace the damaged property.
Starczewski, 61 Wash.App. at 269, 810 P.2d 58. Construing this language, the court stated in dicta that an average person would believe that the amount necessary to repair or replace the damaged property would include the amount necessary to comply with mandatory building codes. Starczewski, 61 Wash.App. at 274, 810 P.2d 58.
The court revisited the building code expense issue in Roberts v. Allied Group Ins. Co., 79 Wash.App. 323, 901 P.2d 317 (1995). Roberts also involved the destruction of a house by fire. Roberts had an endorsement in his policy for replacement expense, which provided:
[Allied] will pay the cost of repair or replacement, but not exceeding the replacement cost of that part of the building damaged, for like construction and use on the same premises.
[Replacement cost is] the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation.
Roberts, 79 Wash.App. at 325, 901 P.2d 317.
The court held that the building code expense was not recoverable under the policy because the phrases "like kind and quality," and "like construction," did not include differences in the new structure mandated by law. Roberts, 79 Wash.App. at 325, 901 P.2d 317. Starczewski was explicitly distinguished on the ground that the policy in that case did not include the "like kind and quality" language. Roberts, 79 Wash.App. at 325, 901 P.2d 317.
The interpretation of terms of an insurance contract is a question of law. Hess, 122 Wash.2d at 186, 859 P.2d 586. Here, "equivalent construction" has the same effect as "like kind and quality." Therefore Roberts applies and the expenses related to *1136 the new building code are not covered under the policy.[4]
Consumer Protection Act Claims
The Dombroskys contend that Farmers' actions in handling their claim are in violation of the Consumer Protection Act. RCW 19.85 et. seq. To prevail in an action under the Consumer Protection Act, a plaintiff must establish the following:
(1) the defendant has engaged in an unfair or deceptive act or practice;
(2) occurring in trade or commerce;
(3) that impacts the public interest;
(4) the plaintiff has suffered injury in his or her business or property; and
(5) a causal link exists between the unfair or deceptive act and the injury suffered.

Industrial Indem. Co. v. Kallevig, 114 Wash.2d 907, 920-21, 792 P.2d 520 (1990) (construing RCW 19.86.010 et. seq. and citing Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co., 105 Wash.2d 778, 784-85, 719 P.2d 531 (1986)).
RCW 48.30.010(1) prohibits any person in the business of insurance from engaging in unfair or deceptive acts or practices in the business, including those defined in regulations promulgated by the insurance commissioner. Kallevig, 114 Wash.2d at 922, 792 P.2d 520. The insurance commissioner has defined several unfair methods of competition or unfair or deceptive acts or practices in the business of insurance, which are codified in WAC 284-30-330. Committing any one of these acts or practices constitutes a per se unfair trade practice. Kallevig, 114 Wash.2d at 923, 792 P.2d 520. The question of whether an act or practice is actionable under the Consumer Protection Act is a question of law. Potter v. Wilbur-Ellis Co., 62 Wash.App. 318, 327, 814 P.2d 670 (1991).
The Dombroskys fail to show that any act by Farmers constituted an unfair or deceptive act or practice actionable under the Act. In fact, the trial court determined that the Dombroskys were overpaid under the policy.
Finally, a reasonable basis for denial of an insured's claim constitutes a complete defense to any claim that the insurer acted in bad faith or in violation of the Consumer Protection Act. Transcontinental Insurance Co. v. Washington Pub. Util. Dist. Util. Sys., 111 Wash.2d 452, 760 P.2d 337 (1988); Felice v. St. Paul Fire & Marine Ins. Co., 42 Wash.App. 352, 711 P.2d 1066 (1985), review denied, 105 Wash.2d 1014 (1986); Starczewski, 61 Wash.App. at 273, 810 P.2d 58. Here, Farmers' reliance on the policy language governing replacement cost was reasonable.
Miscellaneous Tort Claims
Finally, the Dombroskys contend that genuine issues of material fact remain on several tort theories precluding summary judgment. These include negligence, outrage, and the negligent infliction of emotional distress. For the reasons set forth below, the Dombroskys' contentions are without merit.
Negligence
The Dombroskys claim there is a genuine issue of material fact as to whether Farmers was negligent in handling their claim. They fail, however, to set forth any legal authority to support this argument. The record does not show that the Dombroskys presented specific evidence to the trial court to establish the elements of negligence: duty, breach, causation and injury. Mere unsupported assertions will not defeat a summary judgment motion. Vacova Co. v. Farrell, 62 Wash.App. 386, 395, 814 P.2d 255 (1991). The Dombroskys' argument fails.
Outrage
The basic elements of the tort of outrage are: "(1) extreme and outrageous *1137 conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress." Birklid v. Boeing Co., 127 Wash.2d 853, 867, 904 P.2d 278 (1995), quoting Rice v. Janovich, 109 Wash.2d 48, 61, 742 P.2d 1230 (1987); Restatement (Second) of Torts § 46 (ed.1965). The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Grimsby v. Samson, 85 Wash.2d 52, 59, 530 P.2d 291 (1975). The question of whether certain conduct is sufficiently outrageous is ordinarily a question of fact for the jury. Jackson v. Peoples Federal Credit Union, 25 Wash.App. 81, 84, 604 P.2d 1025 (1979). The court, however, must initially determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. Phillips v. Hardwick, 29 Wash.App. 382, 387, 628 P.2d 506 (1981).
The Dombroskys have not presented sufficient evidence to meet this standard. Vincent Dombrosky's declaration, which accompanied the motion for summary judgment, merely claims, "we have been denied the policy benefits to which we have paid and are entitled, and have suffered personal injury and emotional distress, including aggravation of my wife's illnesses and my back condition." Reasonable minds could not differ as to whether Farmers' conduct goes "beyond all possible bounds of decency." Farmers' conduct did not rise to that level and thus summary judgment was properly granted on this issue.
The Dombroskys cite Nord v. Shoreline Sav. Ass'n, 116 Wash.2d 477, 805 P.2d 800 (1991), as setting forth a lesser burden of proof of injury. In Nord, the court held that where the injury from an intentional tort flows from a breach of fiduciary duty, there is no need to prove that the resulting injury was severe. But the court also held specifically that this principle does not apply to the tort of outrage. Nord, 116 Wash.2d at 485, 805 P.2d 800.
Negligent infliction of emotional distress
Finally, the Dombroskys claim the negligent infliction of emotional distress. Recovery under this tort requires that the plaintiff have objective symptoms of mental and emotional suffering. Hunsley v. Giard, 87 Wash.2d 424, 436, 553 P.2d 1096 (1976). In addition, the plaintiff's reaction must be the reaction of a normally constituted person absent defendant's knowledge of some peculiar characteristic or condition of the plaintiff. Hunsley, 87 Wash.2d at 436, 553 P.2d 1096; Shoemaker v. St. Joseph Hosp. and Health Care Center, 56 Wash.App. 575, 581, 784 P.2d 562 (1990), review denied, 114 Wash.2d 1025, 792 P.2d 500 (1990).
Again, the Dombroskys failed to produce evidence to the trial court to establish these elements. Even though Nord applies to the negligent infliction of emotional distress, and thus establishes that the mental injuries need not be severe, there is a complete absence of objective signs of injury. Nord, 116 Wash.2d 477, 805 P.2d 800.
Prejudgment Interest Claim
The Dombroskys claim they are entitled to prejudgment interest on the $25,013.89 contents payment. This argument is without merit as the amount of the Dombroskys' claims was not liquidated. A liquidated claim is one that can be computed with exactness and without discretion. Hansen v. Rothaus, 107 Wash.2d 468, 472, 730 P.2d 662 (1986). Farmers contested the claim and it was not subject to calculation during the time period set forth by the Dombroskys.
Affirmed.
MORGAN and BRIDGEWATER, JJ., concur.
NOTES
[1] There is some dispute as to the exact amount of this payment. The deposition testimony of Farmers' agent Bruce Hubbard states both $22,253.33 and $23,253.33. The point is moot, however, as we find that the Dombroskys were fully indemnified.
[2] The appraisal was ordered by the King County Superior Court. After Butterworth was appointed, the Dombroskys filed a direct appeal to Division One of the Court of Appeals to remove Butterworth. This appeal was dismissed.
[3] The limitation clause in Hess was almost identical to the policy at issue here. The language provided:

(4) We will pay no more than the actual cash value of the damage unless:
(a) actual repair or replacement is complete; or
(b) the cost to repair or replace the damage is both:
(i) less than 5% of the amount of insurance in this policy on the building; and
(ii) less than $1000.
[4] Moreover, we note that even if "equivalent construction" includes the cost of new code requirements, the matter is moot because the Dombroskys suffered no loss due to the new building code. Under the indemnity principle of insurance, an insured receives only that amount that will indemnify actual loss, not an additional windfall above this amount. Keenan v. Industrial Indem. Ins. Co., 108 Wash.2d 314, 318-19, 738 P.2d 270 (1987) (allowing a PIP setoff against underinsured motorist coverage where necessary to prevent double recovery). As the Dombroskys have not taken steps to rebuild the structure, they have not incurred the additional $10,000 expense and they cannot collect this windfall.