[No. 58690-4-I.   Division One.   July 16, 2007.]

BRIAN SHIELDS, *Appellant*, v. ENTERPRISE LEASING COMPANY, *Respondent*.

*Angela K. Wong* and *William A. Keller* (of *Moran Windes & Wong, PLLC*), for appellant.

*Jeffrey D. Eberhard* (of *Smith Freed & Eberhard, PC*), for respondent.

¶1 Schindler, A.C.J. — Enterprise Leasing Company offers third party liability coverage as part of its vehicle rental agreement. Relying on language in the rental agreement and in the Financial Responsibility Act (FRA), chapter 46.29 RCW, Brian Shields argues that Enterprise must provide third party liability coverage even though he expressly rejected the option to purchase third party liability coverage. Shields also contends Enterprise acted in bad faith and violated the Consumer Protection Act (CPA), chapter 19.86 RCW, by misrepresenting available coverage, denying coverage, and failing to investigate his claim. We conclude that under the express terms of the rental agreement and the FRA, Shields is not entitled to third party liability coverage and affirm the trial court's summary judgment dismissal of his lawsuit against Enterprise.

## FACTS

¶2 Brian Shields rented a car from Enterprise on May 20, 2005. The Enterprise rental agreement offers renters the option to purchase coverage for "Collision Damage Waiver" (CDW), "Personal Accident Insurance" (PAI), and "Supplemental Liability Protection" (SLP). CDW coverage waives responsibility for any damage to the rented vehicle. PAI coverage provides the renter with death or medical benefits in the event of an accident. SLP coverage provides third party liability coverage as applicable under state law and excess third party liability insurance coverage. Shields agreed to accept and pay for CDW and PAI coverage but expressly rejected and did not pay for SLP coverage.

¶3 On May 25, Shields rear-ended a car driven by Adam Little. Immediately following the accident, Shields re-

turned the rental car to Enterprise. In order to obtain a replacement car, Shields had to fill out and sign an accident report. In the Enterprise vehicle accident report, Shields stated that his employer is Installco, that he was working at the time of the accident, and that his insurance company is Allstate Insurance. But according to Shields, he told the Enterprise agent that although he had automobile insurance, he did not make his last payment. In his deposition, Shields explained why he signed the Enterprise vehicle accident report stating that he had insurance.

> I signed this document on the date of the accident as a condition to getting another rental vehicle, and before I retained an attorney, I don't know anything about insurance law. Since I did have a policy with Allstate that lapsed for nonpayment of premium in the months before the accident, and I hoped that if I paid the premium, Allstate would cover the accident.

¶4 On June 28, MetLife Auto & Home wrote Shields demanding payment of $1,621.36 for the damage to Little's car. According to the letter, if Shields did not have automobile insurance, MetLife was willing to set up a monthly payment schedule. After a collection agency threatened legal action, Shields forwarded the letter from MetLife and demanded coverage from Enterprise. In the July 9 letter, Shields states that he expects Enterprise to provide coverage for Little's claims and if Enterprise did not contact him within seven days, he would contact an attorney.

> Since I requested FULL COVERAGE on the rental vehicle, I expect to be covered for the other driver's car damage and medical claim. Please have your insurance company contact me within 7 days of this letter. If I do not hear from you or your insurance company by July 16, 2005, I will call a lawyer.

¶5 On July 13, an Enterprise loss control administrator, Jennifer Gwynn, contacted Shields and told him that because he did not purchase third party liability coverage, he should submit the MetLife claim to his insurance company. On July 14, Gwynn wrote a letter to Shields confirming their conversation.

This letter is in response to our conversation on July 13, 2005. Upon review of your rental contract you did not purchase the Supplemental Liability Protection for damages caused to third parties. SLP is not automatically included in your rental. Enterprise Rent-a-Car can not [sic] forward liability protection for your accident at this time.

Gwynn also faxed a copy of the letter to Shields. The fax cover sheet states "[h]ere is a copy of the denial letter for liability protection thru [sic] Enterprise Rent-a-Car."

¶6 On July 21, Shields filed a lawsuit against Enterprise. Shields alleged that Enterprise had a duty to indemnify him for Little's third party liability claims "to the extent required by the motor vehicle financial responsibility laws of Washington State." Shields also alleged that by denying coverage, Enterprise breached the rental agreement, acted in bad faith, and violated the CPA.[1]

¶7 Enterprise filed a summary judgment motion to dismiss Shields' lawsuit. Enterprise asserted that as a matter of law, Enterprise has no duty to provide third party liability coverage to renters who do not purchase SLP coverage. In opposition, Shields argued that under the terms of the rental agreement and the FRA, Enterprise has a duty to provide liability coverage for third party claims. Shields also argued that by denying coverage, Enterprise violated several Washington Administrative Code (WAC) regulations governing insurance claims and the CPA. The trial court granted the motion for summary judgment and dismissed Shields' lawsuit. The court also awarded Enterprise statutory attorney fees. Shields appeals.

## ANALYSIS

### Third Party Liability Coverage

¶8 Even though Shields did not purchase third party liability coverage, he contends Enterprise has a duty to

---

[1] After the lawsuit was filed, Enterprise settled with MetLife. MetLife and Little agreed to release Enterprise and Shields from all liability.

provide third party liability coverage under the terms of the rental agreement and RCW 46.29.490(2)(b) of the FRA.

¶9 We review summary judgment de novo. *Wright v. Safeco Ins. Co. of Am.*, 124 Wn. App. 263, 270, 109 P.3d 1 (2004). Summary judgment is properly granted when the pleadings and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Only when reasonable minds could reach but one conclusion on the evidence should the court grant summary judgment. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485, 78 P.3d 1274 (2003).

■■ ¶10 To the extent a rental car agreement contains insurance provisions, it is treated as a stand-alone motor vehicle insurance policy. *New Hampshire Indem. Co. v. Bridge Rent-A-Car Sys., Inc.*, 148 Wn.2d 929, 935, 64 P.3d 1239 (2003); *Van Vonno v. Hertz Corp.*, 120 Wn.2d 416, 425, 841 P.2d 1244 (1992). And when a self-insured vehicle rental company offers liability insurance, it must give the renter the opportunity to expressly accept or reject coverage. *Corley v. Hertz Corp.*, 76 Wn. App. 687, 693, 887 P.2d 401 (1994).

■■ ¶11 Interpretation of the Enterprise rental agreement is a question of law we review de novo. *New Hampshire Indem. Co.*, 148 Wn.2d at 933; *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 730, 837 P.2d 1000 (1992). We construe insurance agreements in the same manner as contracts. *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 665, 15 P.3d 115 (2000). The agreement is read as a whole and given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance. *Am. Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co.*, 134 Wn.2d 413, 428, 951 P.2d 250 (1998). We interpret the agreement in a manner that gives effect to each provision. *Smith v. Cont'l Cas. Co.*, 128 Wn.2d 73, 78, 904 P.2d 749 (1995). Courts determine coverage under the plain meaning of the agreement. *Capelouto v. Valley Forge Ins. Co.*, 98 Wn. App. 7, 13-14, 990 P.2d 414 (1999). If the language of an insurance

agreement is clear and unambiguous, the terms must be given the effect of their plain meaning. *Progressive Cas. Ins. Co. v. Jester*, 102 Wn.2d 78, 79-80, 683 P.2d 180 (1984). The court must enforce a clear and unambiguous agreement as written and may not create ambiguity where none exists. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005). An ambiguity only exists if the language is susceptible to two different reasonable interpretations. *Am. Nat'l Fire Ins. Co.*, 134 Wn.2d at 428.

■ ■ ¶12 The Enterprise rental agreement offers the renter the opportunity to purchase and accept insurance coverage for collision damage (CDW), accidental death and medical benefits (PAI), and supplemental third party liability protection (SLP). There is no dispute Shields purchased and accepted CDW and PAI but rejected SLP coverage. The SLP provision explicitly describes the availability of minimum and excess third party liability coverage.

16. *Optional Supplemental Liability Protection.*

THE PURCHASE OF SUPPLEMENTAL LIABILITY PROTECTION IS OPTIONAL AND NOT REQUIRED IN ORDER TO RENT A VEHICLE.

*SLP Benefits*:

Optional Supplemental Liability Protection (SLP) provides Renters with minimum financial responsibility limits as outlined in the applicable motor vehicle financial responsibility laws of the state where Vehicle is operated AND excess insurance provided by Empire Fire and Marine Insurance Company, which supplies Renter and Additional Authorized Drivers with third-party liability protection with a combined single limit per accident equal to the difference between the minimum financial responsibility limits set forth above and $1,000,000.00. Combined Single Limit per accident.

¶13 Relying on the language in paragraph 6 of the rental agreement, Shields asserts that, nevertheless, Enterprise has a legal obligation to provide coverage under the FRA. Paragraph 6 is not ambiguous. In paragraph 6, Enterprise states that as a state certified self-insurer, it complies with the financial responsibility laws and, except "to the extent

required by the motor vehicle financial responsibility laws of the applicable state," it does not extend any coverage unless the renter purchases SLP. Thus, under paragraph 6, unless required by the FRA, Enterprise does not provide third party liability insurance coverage to the renter unless the renter purchases SLP.

> 6. *Responsibility to Third Parties.* Owner complies with applicable motor vehicle financial responsibility laws as a state certified self-insurer, bondholder, or cash depositor. Except to the extent required by the motor vehicle financial responsibility laws of the applicable state or otherwise by law, Owner does not extend any of its motor vehicle financial responsibility or provide insurance coverage to Renter, Additional Authorized Drivers, passengers or third parties through this Agreement. Owner's liability protection does not apply until after the exhaustion of all automobile liability insurance and/or other protection available to the Renter . . . and then Owner's protection applies only to the extent it is needed to meet, on a cumulative basis with all such liability insurance or protection available to the Renter . . . , the minimum financial responsibility limits required by applicable law. SEE PARAGRAPH 16 FOR INFORMATION ON OPTIONAL SUPPLEMENTAL LIABILITY PROTECTION.

¶14 Paragraph 7 also unequivocally states that unless the renter purchases SLP, the renter is liable for all third party liability claims.

> 7. *Indemnification by Renter.* RENTER IS LIABLE FOR ANY INJURY, DEATH OR DAMAGE ARISING OUT OF THE USE OF VEHICLE. RENTER SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS FROM ALL LOSSES, LIABILITIES, DAMAGES, INJURIES, CLAIMS, DEMANDS, COSTS, ATTORNEY FEES, AND OTHER EXPENSES INCURRED BY OWNER IN ANY MANNER FROM THIS RENTAL TRANSACTION, OR FROM THE USE OF VEHICLE BY ANY PARTY, INCLUDING CLAIMS OF, OR LIABILITIES TO, THIRD PARTIES. Renter shall present a claim to Renter's insurance carrier for such events or losses; but in any event, Renter shall have final responsibility to Owner for all such losses. This obligation may be limited if Renter elects to purchase optional

SLP and/or optional CDW. See Paragraphs 15 and 16 for more information.

¶15 Shields relies on the statutory requirements of RCW 46.29.490(2)(b) to assert that Enterprise has an obligation to provide minimum third party liability coverage of $25,000. Shields' reliance on RCW 46.29.490(2)(b) is misplaced. RCW 46.29.490(2)(b) sets forth the requirements that an owner's policy must satisfy for proof of financial responsibility.

¶16 Under the FRA, if a motorist is involved in an accident resulting in bodily injury or death, the vehicle owner must demonstrate the ability to compensate the injured person and future financial responsibility. RCW 46.29.060, .070, .250. One means of proving future financial responsibility is by filing a certificate of insurance showing the owner has a motor vehicle liability policy.[2] RCW 46-.29.450(1), .460. Under RCW 46.29.490(2)(b), the motor vehicle liability policy must provide third party liability coverage of at least $25,000. RCW 46.29.490(2)(b) provides:

(2) Owner's policy. Such owner's policy of liability insurance:

. . . .

(b) Shall insure the person named therein and any other person, as insured, using any such vehicle or vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such vehicle . . . subject to limits exclusive of interest and costs, with respect to each such vehicle as follows: Twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident.

---

[2] A person can also establish proof of financial responsibility by posting a bond, depositing securities in the amount of $60,000, or providing a certificate of self-insurance. RCW 46.29.450(2), (3), and (4).

¶17 But the provisions of RCW 46.29.490(2)(b) do not apply to Enterprise. Because Enterprise is a self-insured rental company, it is not subject to the requirements of RCW 46.29.490(2)(b). RCW 46.29.630(1) permits any person with more than 25 registered vehicles to obtain a certificate of self-insurance issued by the Department of Licensing.[3] Here, because there is no dispute Enterprise is certified under RCW 46.29.630, Enterprise is not required to provide minimum third party liability coverage under the FRA. RCW 46.29.080.

¶18 And to the extent Shields is arguing that this court should require minimum third party liability coverage for all automobile liability policies, as a matter of public policy, our Supreme Court has rejected that argument. *See Barkwell v. Englen*, 57 Wn.2d 545, 548, 358 P.2d 317 (1961) (it is the function of the legislature and not the judiciary to enact a compulsory financial responsibility law applicable to the owners and operators of motor vehicles, and appellant's "request for such legislation and the pronouncement of public policy should be addressed to the legislature"); *see also Cont'l Cas. Co. v. Weaver*, 48 Wn. App. 607, 614, 739 P.2d 1192 (1987) (the legislature must address whether to extend the FRA's requirement for omnibus coverage to all auto liability policies on public grounds).[4]

---

[3] RCW 46.29.630 provides the procedure which a person must follow to qualify as a self-insurer:

(1) Any person in whose name more than twenty-five vehicles are registered in this state may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the department as provided in subsection (2) of this section.

(2) The department may, in its discretion, upon the application of such a person, issue a certificate of self-insurance when it is satisfied that such person is possessed and will continue to be possessed of ability to pay judgment obtained against such person. Such certificate may be issued authorizing a person to act as a self-insurer for either property damage or bodily injury, or both.

[4] Because we conclude Enterprise was not legally required to provide coverage under the rental agreement, we deny Shields' request for attorney fees under *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).

*CPA Violations and Bad Faith*

¶19 Even if he is not entitled to third party liability coverage under the terms of the Enterprise rental agreement and the FRA, Shields contends the trial court erred in dismissing his CPA and bad faith claims against Enterprise.

¶20 To prevail on a CPA claim, Shield must show: (1) an unfair or deceptive practice (2) in trade or commerce (3) that impacts the public interest, (4) which causes injury to the party in his business or property, and (5) which injury is causally linked to the unfair or deceptive act. *Indus. Indem. Co. of Nw. v. Kallevig*, 114 Wn.2d 907, 920-21, 792 P.2d 520 (1990). Failure to meet any one of these elements under the CPA is fatal to the claim. *Sorrel v. Eagle Healthcare, Inc.*, 110 Wn. App. 290, 298, 38 P.3d 1024 (2002). Whether an alleged act is unfair or deceptive is a question of law. *Leingang v. Pierce County Med. Bureau*, 131 Wn.2d 133, 155, 930 P.2d 288 (1997). An insured can show an unfair or deceptive practice that impacts the public interest by establishing a violation of the regulations related to unfair insurance company practices as set forth in chapter 284-30 WAC. *Dombrosky v. Farmers Ins. Co. of Wash.*, 84 Wn. App. 245, 260, 928 P.2d 1127 (1996).

¶21 Shields asserts that Enterprise (1) failed to disclose that Shields was entitled to coverage in violation of WAC 284-30-330(1) and WAC 284-30-350(1);[5] (2) denied coverage based on the failure to purchase SLP in violation of WAC

---

[5] Under WAC 284-30-330(1), an insurer cannot misrepresent pertinent facts or insurance policy provisions. And under WAC 284-30-350(1), no insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages, or other provisions of an insurance policy or insurance contract under which a claim is presented.

284-30-380(1);[6] and (3) failed to investigate before denying coverage in violation of WAC 284-30-330(2).[7]

¶22 Independent of whether an insurer must provide coverage, an insured may bring a claim for violation of the CPA and bad faith. *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wn.2d 269, 279, 961 P.2d 933 (1998) (an insurer's duty of good faith is separate from its duty to indemnify if coverage exists); *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 329, 2 P.3d 1029 (2000) (an insurer owes a statutory duty of good faith to its insured). "The determinative question is reasonableness of the insurer's actions in light of all the facts and circumstances of the case." *Id.* at 329-30 (citing *Kallevig*, 114 Wn.2d at 920). "[A] reasonable basis for denial of an insured's claim constitutes a complete defense to any claim that the insurer acted in bad faith or in violation of the Consumer Protection Act." *Dombrosky*, 84 Wn. App. at 260 (citing *Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 760 P.2d 337 (1988)). "Acts performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the consumer protection law." *Leingang*, 131 Wn.2d at 155.

¶23 Here, because Enterprise did not have a legal obligation to provide third party liability coverage to Shields, Enterprise did not violate WAC 284-30-330(1), WAC 284-30-350(1), and WAC 284-30-380(1). As to Shields' claim that Enterprise violated WAC 284-30-330(2), the undisputed facts do not establish that Enterprise failed to acknowledge or promptly respond to Shields' claim for third party liability coverage. There is no dispute that Shields unequivocally rejected third party liability coverage in the rental agreement. In the accident report, Shields states he

---

[6] Under WAC 284-30-380(1), no insurer shall deny a claim on the grounds of a specific policy provision, condition, or exclusion unless reference to such provision, condition, or exclusion is included in the denial.

[7] Under WAC 284-30-330(2), an insurer must acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

is insured by Allstate. For the first time, Shields notified Enterprise about MetLife's claims and demanded coverage on July 9. On July 13, an Enterprise agent contacted Shields to inform him that because he did not purchase third party liability coverage, Enterprise was denying coverage. And on July 14, Enterprise sent a letter confirming denial of coverage. On this record, reasonable minds could only conclude that Enterprise promptly responded to Shields' claim for third party liability coverage and did not violate WAC 284-30-330(2).

## CONCLUSION

¶24 Enterprise does not have a statutory or contractual duty to provide third party liability coverage to renters who expressly reject the option to purchase that coverage. We also conclude that Enterprise did not act in bad faith or violate the CPA and affirm the trial court's summary judgment decision to dismiss Shields' lawsuit.[8]

BAKER and BECKER, JJ., concur.

---

[8] Because Shields did not appeal the trial court's decision to deny his motion to compel discovery of Enterprise's letters denying coverage to other renters, we need not consider his argument that the court abused its discretion in doing so. RAP 10.3(a)(5); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). In any event, because the discovery was not relevant to Shields' claim that Enterprise violated the provisions in chapter 284-30 WAC, the court did not abuse its discretion in denying Shields' motion to compel.